IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TOM DANSIE and CATHERINE DANSIE, <br><br> Plaintiffs, <br><br> vs. <br><br> EATON CORPORATION, et al., <br><br> Defendants. | MEMORANDUM DECISION <br><br> AND ORDER <br><br><br> Case No. 2:12-cv-214 |

On February 13, 2013, the court held a hearing in the above-captioned matter on two motions: (1) a Motion to Dismiss and for Judgment on the Pleadings filed by Defendants Eaton Corporation and Eaton Aeroquip, Inc. (collectively "Eaton"); and (2) a Motion to Dismiss filed by Defendant CBS Corporation (CBS). For the reasons stated at the hearing, and for the reasons discussed below, the court GRANTS both motions.

BACKGROUND

Plaintiffs Tom Dansie and Catherine Dansie bring this action to recover for damages that Mr. Dansie received in a serious industrial accident. On February 2, 2006, Mr. Dansie was working at an incinerator facility in Aragonite, Utah when flammable materials escaped from a hose. These materials erupted into a fire ball and Mr. Dansie sustained extensive injuries over the majority of his body. Mr. Dansie alleges that his past medical bills exceed $2 million. The Dansies contend that the cause of the accident was a tear in a Teflon hose that was covered by a stainless steel mesh. According to the Plaintiffs, the tear may have been caused by defective

manufacturing, improper installation, or improper adjustment.

The case currently pending before the court is not the first action that the Plaintiffs have filed against these Defendants. The Dansies previously filed an action that was heard by the Honorable Dee Benson. *See Dansie v. Eaton Corp.*, Case No. 2:07-cv-963. In this case, the causes of action that the Dansies alleged against Eaton were divided into two categories of claims. First, the Dansies asserted that Eaton was directly liable for the Dansies' injuries as the manufacturer or seller of the hose allegedly involved in the injurious fire under theories of strict product liability, negligence, breach of implied warranties, and breach of express warranty. (Am. Complaint, at 5-8, Dkt. No. 72 in Case No. 2:07-cv-963.) Second, the Dansies alleged that Eaton was liable for the Dansies' injuries under a successor liability theory. (*Id.* at 8.) The Dansies later filed a Motion for Leave to Amend the Complaint. (Dkt. No. 114 in Case No. 2:07-cv-963.) In its Proposed Second Amended Complaint, the Dansies sought to add a new claim for relief against Eaton under the theory of successor liability contained in the Restatement (Third) of Torts: Products Liability § 13. This new cause of action alleged that Eaton, as a successor to the company who manufactured or sold the hose, owed an independent, post-asset sale duty to warn its predecessor's customers of defects in the hose.

Judge Benson dismissed the Dansies' first category of claims because he found that the Plaintiffs "set forth no facts to demonstrate the plausibility of their claim that Eaton manufactured or sold the hose at the center of this litigation." (Order, at 3, May 3, 2011.) In his ruling, Judge Benson took judicial notice of facts that supported the theory that Eaton was not the manufacturer of the faulty hose. These facts included an investigative report issued by the Utah Labor Commission that concluded that the hose was installed in 1994, eight years before Eaton

acquired any hose manufacturing assets from its predecessor company, Dana Corporation (Dana). (*Id.*)

Judge Benson dismissed the Dansies' direct liability claims without prejudice and provided that "Plaintiffs may revive their claims against Eaton upon timely discovery of facts that make plausible an allegation that Eaton manufactured or sold the subject hose." (*Id.* at 4.) Judge Benson also noted that Eaton had consented to provide responses to limited, focused discovery on the sole issue of the manufacture and sale of the hose between September 30, 2002 (the date when Eaton acquired the hose manufacturing assets from Dana), and the date of Mr. Dansie's injury. (*Id.*) Judge Benson dismissed the Dansies' successor liability claim with prejudice because he found that the Dansies voluntarily extinguished this claim when they settled their claims with Dana. (*Id.* at 4.)

Finally, Judge Benson denied the Dansies leave to amend their complaint. (*Id.* at 7.) He found that the factual allegations underlying the Dansies' successor liability claim based on a post-sale duty to warn were insufficient to satisfy the *Twombly* pleading standards. (*Id.*); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

CBS was also a Defendant in the lawsuit in front of Judge Benson. According to the Dansies, CBS was liable for the Dansies' injuries as a former operator of the hazardous waste incinerator in which Mr. Dansie was injured. Judge Benson dismissed the claims against CBS because he concluded that CBS was not an operator of the incinerator: "CBS Corporation's only connection to the facility was as a shareholder to National Electric, Inc., which was a shareholder of Aptus, Inc., an entity that owned the incinerator in the 1990s." (*Id.* at 6.) The court found that the Dansies "failed to allege any fact that would lead the Court to conclude that there was a

3

plausible cause of action against CBS Corporation due to its remote, both in time and ownership, interest in and control over the incinerating facility." (*Id.*)

On February 24, 2012, the Dansies filed the action that is currently pending before this court. The Dansies have alleged many of the same causes of action against Eaton and CBS, and these two parties now move the court to dismiss this second case against them.

ANALYSIS

**1.   Eaton's Motion to Dismiss and for Judgment on the Pleadings**

As in the action in front of Judge Benson, the Dansies allege a number of causes of action against Eaton based on the theory that Eaton is directly liable for Mr. Dansie's injuries as the manufacturer or seller of the hose. This claims include causes of action for strict liability, negligence, breach of implied warranties, and breach of express warranty. The Dansies also maintain that Eaton is liable under the theory that it owed a post-sale duty to warn end users about defects in any products manufactured by its predecessor, Dana.

The court finds that these claims are almost identical to the claims that were dismissed by Judge Benson. While those claims were dismissed without prejudice, a dismissal without prejudice is not an invitation to submit largely identical claims to a new judge. By submitting almost identical claims, the Dansies have placed the court in the unusual position of an almost appellate review of Judge Benson's decision. The court declines to substitute its own judgment for the judgment of Judge Benson unless the Dansies can demonstrate that their new claims are sufficiently distinct.

The court finds that the Dansies have failed to carry this burden. Judge Benson was clear that, in order to re-assert any direct liability claims against Eaton, the Plaintiffs would have to

come forward with "facts that make plausible an allegation that Eaton manufactured or sold the subject hose." But the only new information provided by the Dansies in the current action is an allegation that Eaton used the same Boston Weatherhead products and part numbers that were used by Dana. That information, which is not materially different from the information that was in front of Judge Benson, is insufficient to overcome the findings from the Utah Labor Commission and the Dansies' previous admissions demonstrating that the hose was likely manufactured in 1994 and therefore must have been manufactured by Dana and not Eaton. Without more compelling evidence, the court cannot allow the Dansies to re-argue the same claims against Eaton simply because they have brought their case before a new judge.

The court notes that the Dansies declined to engage in any discovery permitted by Judge Benson, even though Eaton consented to participate in that discovery. The court will not allow the Plaintiffs a second chance to conduct this discovery now.

The court also dismisses the Dansies' claim that Eaton owed a post-sale duty to warn end users about defects in the products created by its predecessor. Judge Benson already denied the Dansies leave to amend their complaint to add a claim that is not materially different from the claim that the Dansies now present to the court. The only new information the Dansies identified in their latest Complaint is the existence of an Asset Purchase Agreement (APA) between Dana and Eaton. But the Dansies have not demonstrated that any provision of the APA required Eaton to assume a duty to monitor, service, or maintain hoses sold by Dana before Eaton purchased Dana's assets.

In order to show that Eaton had a post-sale duty to warn, the Dansies must allege that Eaton undertook or agreed to provide service for maintenance or repair of Dana's products or

5

entered into a similar relationship with purchasers of Dana's products giving rise to actual or potential economic advantage to Eaton.  *See* Restatement (Third) of Torts: Products Liability § 13.  While the Dansies recite this language in their Complaint, the provisions of the APA that the Dansies point to simply state that Eaton assumed all product warranty obligations for products manufactured by Dana and agreed to hold Dana harmless for any future liability arising out of accidents involving Dana's products.  The product warranty provision does not establish a service and maintenance relationship with users of Dana's products, but merely states that Eaton will honor any product warranties.  And the hold harmless provision is not applicable here because Judge Benson held that Dana's liability was extinguished when it reached a settlement with the Dansies.

In any event, the Dansies must also plead sufficient facts to meet the second prong of Section 13 of the Restatement, which requires the Plaintiffs to show that a reasonable person in the position of the successor company would provide a warning.  The Dansies' argument that Eaton should have warned end users of possible defects in Dana's products, even if those products were purchased twelve years earlier, would greatly expand liability under Section 13.  The court is not persuaded by this argument, especially since the Dansies have not pled any facts to suggest why a reasonable person in Eaton's position would have even known of possible defects in the hose at the incinerator, let alone provide a warning.  Even with the addition of the provisions in the APA that the Dansies cite, the court agrees with Judge Benson that the Dansies have not pled a plausible claim for relief for a post-sale duty to warn.

The Dansies' final claim against Eaton for loss of consortium is derivative of the Dansies' other claims.  Because the court dismisses the Dansies' allegations of direct and successor

liability against Eaton, there is no basis on which the Dansies may proceed with their loss of consortium claim.

For the reasons discussed above, the court finds that the Dansies failed to cure the deficiencies that Judge Benson mentioned in his Order dismissing the claims against Eaton in their first case. Accordingly, the Court GRANTS Eaton's Motion to Dismiss and for Judgment on the Pleadings.

**2. CBS's Motion to Dismiss**

The court finds that the claims asserted by the Dansies against CBS are indistinguishable from the claims that Judge Benson dismissed in the previous case. If anything, the Dansies' have altered the language in their current Complaint to make the allegations against CBS more vague than the allegations in Judge Benson's case. The Dansies have not pled facts to show that CBS has any connection to the incinerating facility that is more direct than as the shareholder of a shareholder of an operator. As Judge Benson ruled, the court finds that CBS's interest and control over the facility is too remote to support liability.

Because the Dansies failed to cure the deficiencies that Judge Benson found in the previous case, the court GRANTS CBS's Motion to Dismiss.

CONCLUSION

As discussed above, the court GRANTS Eaton's Motion to Dismiss (Dkt. No. 9) and CBS's Motion to Dismiss (Dkt. No. 7). Because the Dansies were unable to bring forward sufficient facts to support their claims against these two parties after Judge Benson denied their original claims without prejudice, the court declines to allow the Plaintiffs a second opportunity to do so. Accordingly, the court DISMISSES WITH PREJUDICE all claims against Eaton and

CBS, and each party shall bear its own attorneys' fees and costs.

The court notes that its reasoning in this Order does not apply to the remaining Defendants in this lawsuit, who have not yet been served but who may have a more direct connection to the facility and accident that were the subject of the Plaintiffs' claims. The court has granted the Dansies the time that is allowed under Rule 4(a) of the Federal Rules of Appellate Procedure for filing a notice of appeal based on the dismissal of Eaton and CBS to decide whether to proceed with the remaining claims against these Defendants.

SO ORDERED this 18th day of March, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge